## STANDARD GARMENTS CO., INC. *v.* HOFFMAN

[No. 59, October Term, 1951.]

*Decided January 10, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Bernard W. Rubenstein,* with whom was *Sydney R. Traub,* on the brief, for appellant.

*Edwin J. Wolf,* with whom was *W. Walter Farnandis,* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit by a lessee against a sublessee for increased premiums on insurance on the leased building, under the terms of a clause which is contained both in

the original lease and in the sublease. The amount of insurance on the building had been increased by the owners, and the rate had been increased as well, due to the nature of the business of the sublessee. The lessee paid the difference between the original rate and the new rate on the insurance already on the property at the time of the lease, and the additional insurance which was placed thereon. It then sued the sublessee. The trial court held that the sub-lessee was bound to pay only the increased rate on the original insurance and gave a judgment for the lessee for $135.05. From this judgment the lessee appealed.

The premises in question are 701-709 West Pratt Street in the City of Baltimore, and are owned by the trustees of the estate of Louis B. Suskin. On February 16, 1948, they leased the premises to Standard Garments, Inc., the appellant herein. On July 1, 1949, Standard Garments, Inc., subleased a major portion of the premises to Eugene C. Hoffman, Sr., trading as United Decorative Flower Company, the appellee. Clause Tenth in the sublease, which was similar to a clause in the original lease, was as follows:

"It is further agreed that the Tenant will not do, or knowingly permit to be done, nor keep nor permit to be kept, upon the said premises, anything which will contravene the policies of insurance against loss by fire or other causes, or which will increase the rate of fire or other insurance on the buildings on the premises beyond the rate in effect on the building of which the herein leased premises are a part immediately prior to the Tenant's occupancy, and should any act of the Tenant so increase said rate, then, in addition to the rental to be paid, the Tenant shall be liable for such additional premium; and the Tenant further agrees that it will in no case keep or permit to be kept; do or permit to be done, in or about or upon said premises, anything of any character so hazardous as to render it difficult, impracticable, or impossible to procure such insur-

ance in companies acceptable to the Landlord."

The amount of insurance in effect at the time the sublease was signed was $175,400.00, of which $130,000.00 was fire insurance, and $45,400.00 was sprinkler leakage and rental value insurance. In December, 1949, the owners of the property were advised that the amount of insurance in effect was insufficient. They employed an appraiser, and the latter reported that the sound insurable value would be $324,563.79. The owner-trustees were also notified by the insurance carriers that due to the nature of the business carried on by the sublessee, and his use of the premises for the manufacture, storage and sale of artificial flowers, the rate of insurance premiums would be increased. The increased premiums on all of the insurance, original and increased, amounted to $1,217.59. Of this $430.99 is the increased premium on the original insurance, and the remainder of $786.60 is the increased premium on the additional insurance. The sublessee paid $295.94, which was $135.05 less than the additional cost on the original insurance. The appellant claims that he owes not only this $135.05, but also the $786.60 of the increased premium on the additional insurance, and that the judgment should be for $921.65.

The determination of this question depends upon the construction of Clause Tenth in the sublease. The purpose of this clause was undoubtedly to protect the landlord against increased expense by reason of the nature of the business of the tenant, but it is not restricted in its terms to the policies of insurance on the building at the time of the lease. It appears from the agreed statement of fact that at the time of the signing of the sublease, no question was raised by anyone as to the amounts or types of insurance then carried on the premises, and these subjects were not mentioned. It must be assumed by a tenant that the owner of a building will carry adequate insurance of such types as may be necessary to protect it, and the agreement not to do anything which will contravene the policies of insurance does not refer only to those then upon the building, which

may be about to expire, but to all which may be placed upon it, whether in an increased amount or not, during the tenancy. It does not appear from the record whether or not the increase in the amount of insurance in this case had any relation to the business of the sub-tenant. It may have had, or it may have been because the owners were only then made aware that they were under-insured. It makes no difference in our view of the matter what was the cause, provided the additional insurance was necessary for proper protection, and was taken out in good faith, and there appears to be no dispute about these two facts. We think, therefore, that the only reasonable construction of Clause Tenth is that the sublessee became obligated to pay the increased premiums, due to the nature of his business, on all of the insurance carried upon the property during his tenancy.

We have been referred to no case directly on this point, and the exhaustive examination which we have made discloses none. Of the cases cited to us, none of them, except one hereinafter discussed, involves liability for increase of rates in policies purchased after the execution of a lease. The leading cases are: *Thomson-Houston El. Co. v. Durant Land Imp. Co.*, 1893, 4 Misc. 207, 23 N. Y. S. 900; *Noel v. Bencke Lithograph Co.*, 1890, 58 N. Y. Super Ct. 587, 11 N. Y. S. 589; *Frank v. Auerbach*, 1908, 59 Misc. 475, 110 N. Y. S. 890; *St. Regis Restaurant, Inc. v. Powers*, 1927, 219 App. Div. 321, 219 N. Y. S. 684; *Kozodoy v. Hindy*, 1946 187 Misc. 34, 60 N. Y. S. 2d 695, 697. There is an annotation on the general subject in 16 British Ruling Cases, beginning on page 730, in which there is a discussion of these and other cases, but none of the authorities covers the precise point. The nearest approach to it is the *Kozodoy* case, *supra*, cited by the trial court, but it does not sustain his conclusion. In that case, there was a printed clause similar to Clause Tenth which provided that the tenant would not do anything "which will in any way increase the rate of fire insurance on said demised premises, nor use the demised premises or any part thereof, nor suffer

or permit their use for any business or purpose which
would cause an increase in the rate of fire insurance on
said building, and the Tenant agrees to pay on demand
*any* such increase." (Emphasis supplied.) At the end
of the lease, however, there was an additional typewritten
clause which said: "The tenant agrees to pay all in-
creases, if any, in the cost of *existing* insurance due to
the tenant's occupancy of the demised premises." (Em-
phasis supplied.) The court considered these two clauses
and said they conflicted. It said the first clause "imposes
liability for increase on *any* policy", and that the second
clause limited liability to *existing* insurance. Under these
circumstances, the court said that the typewritten clause
controlled the interpretation of the lease, but it is clear,
from what is said, that the interpretation of the printed
clause, which is similar to Clause Tenth before us, was
that it applied to all insurance, and, had it not been
limited by the typewritten clause, the tenant would have
been liable for the increase of the rate on the additional
insurance.

The appellee contends with much earnestness that
a lease must be construed most strongly against a lessor
and in favor of a lessee. That is, of course, a general rule
of construction, but it is only to be resorted to when the
words of the instrument are doubtful in their meaning
or susceptible to more than one construction. *Carroll's
Lessee v. Granite Manufacturing Co.*, 11 Md. 399, 410.
*Zittle v. Weller*, 63 Md. 190, 196. *Packard v. Corporation
for Relief of Widows, etc.*, 77 Md. 240, 244, 26 A. 411.
*Hodges, Trustee, v. Owings*, 178 Md. 300, 304, 13 A. 2d
338. *Thompson, Real Property*, Sec. 1113. *Tiffany,
Real Property* (3d Ed.), Sec. 978.

In the case before us, we do not think there is any
room for doubt. The wording is plain, it is all-inclusive,
it is not restricted, and, under such circumstances, we
are not justified in interpreting it in a manner contrary
to its plain meaning, solely for the purpose of benefitting
the sublessee.

The judgment will be reversed and a judgment entered for the appellant, plaintiff below, against the appellee, defendant below, for the sum of $921.65.

> *Judgment reversed with costs and judgment entered in favor of the appellant against the appellee for $921.65, with interest from May 4, 1951, and costs.*