416

SHANNON AUDLEY

v.

BILL MELTON INDIVIDUALLY AND d/b/a BILL MELTON PRODUC-
TIONS

April 12, 1994

*Wiggin & Nourie, P.A.*, of Manchester (*John P. Kacavas* on the
brief, and *Ronald W. Cox, Jr.* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D.
Dunn* on the brief, and *Julie Ann Boyle* orally), for the defendant.

HORTON, J.  The plaintiff, Shannon Audley, appeals from a grant
of summary judgment by the Superior Court (*Morrill*, J.), arguing
that two exculpatory contracts she signed did not release the defend-
ant from liability for his own negligence. We reverse.

The plaintiff, a professional model, was bitten on the head by an
adult male lion with which she had been posing during a photography
shoot at the studio of the defendant, Bill Melton. The plaintiff filed a

negligence action alleging, *inter alia*, that the defendant failed to take any precautionary action despite noticing that the plaintiff's hair was agitating the lion. The defendant moved to dismiss, arguing that the suit was barred by either of two releases signed by the plaintiff. The first release, which primarily addressed proprietary rights to the photographs and negatives, included a sentence that read: "I further release the photographer, his/her agents or assigns from any and all liability whatsoever." The second release, on which both parties have principally focused, provides in full:

> "I *Shannon Audley* realize that working with the [*sic*] wild and potentially dangerous animals (i.e. lion, white tiger, hawk) can create a hazardous [*sic*] situation, resulting in loss of life or limb. I take all responsibility upon myself for any event as described above that may take place. I hold Bill Melton and T.I.G.E.R.S. or any of their agents free of any or all liability. I am signing this of my on [*sic*] free will."

The plaintiff objected to the motion to dismiss, alleging upon "information and belief" that the defendant knew the lion had been involved in previous attacks. She argued that the releases were unenforceable because she was fraudulently induced into signing them by the defendant's assurances that the lion was safe. She also argued that even if the releases were enforceable, they did not release the defendant from liability for his own negligence. After the Trial Court (*Murphy*, J.) denied the motion to dismiss, the defendant filed a motion for summary judgment coupled with an affidavit stating that he had no knowledge of any prior attack by the lion. The Trial Court (*Morrill*, J.) conditionally granted the motion, giving the plaintiff ninety days to produce evidence that the defendant knew of any previous attack. After the plaintiff failed to produce such evidence, the trial court entered final judgment.

On appeal, the plaintiff makes several arguments: (1) that the releases are unenforceable as against public policy; (2) that even if enforceable, they do not release the defendant from liability for his own negligence; and (3) that even if the releases reached the defendant's own negligence, summary judgment was improper because she should have been afforded more time to discover evidence that would support her fraudulent inducement argument. We hold that the releases are enforceable but do not release the defendant from liability for his own negligence. Accordingly, we do not reach the plaintiff's third argument.

■■ This case is controlled by the principles we announced in *Barnes v. New Hampshire Karting Association*, 128 N.H. 102, 509

A.2d 151 (1986). In *Barnes* we explained that exculpatory contracts will not be enforced if they contravene public policy either because a special relationship exists or there is a disparity in bargaining power. *Id.* at 106–07, 509 A.2d at 154. Those exculpatory contracts that do not offend public policy and are enforceable will still be strictly construed against the defendant. *Id.* at 107, 509 A.2d at 154. Thus, in order to effectively release a defendant from liability for his own negligence, "the contract must clearly state that the defendant is not responsible for the consequences of his negligence." *Id.* There is no requirement that the term "negligence" or any other magic words appear in the release, *see Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623, 419 A.2d 1111, 1113 (1980), "[a]s long as the language of the release clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence." *Barnes*, 128 N.H. at 107, 509 A.2d at 154.

■ We first hold that the exculpatory contracts in this case are not void as against public policy. As the plaintiff concedes, there is no "special relationship" between the parties. This case also does not have any hallmarks of a disparity in bargaining power. The photography service offered by the defendant is not a "matter of practical necessity." *Id.* at 108, 509 A.2d at 155. Nor did the defendant in this case have monopoly control over this service such that the plaintiff could not have gone elsewhere. The plaintiff, however, makes much of the fact that her participation in the photography session was related to her employment. To conclude that services are essential or that a disparity in bargaining power exists simply because the services are related to employment would sweep too broadly, particularly considering that there is no evidence that the plaintiff was paid to participate in the photography session. To the contrary, the record supports the opposite conclusion. As the defendant stated in his affidavit, the purpose of the photography session was for the plaintiff to "model[] for a set of publicity photographs to be used as portfolio material in order to further *her* modelling career." (Emphasis added.)

■ We now turn to the effect of the releases. Our discussion focuses on the language of the second release because the defendant has essentially conceded that the first release does not meet the *Barnes* standard. The second release recognizes certain risks inherent in working with wild animals, and then promises to hold the defendant "free of any or all liability." Although this release insulates

the defendant from liability for injuries inflicted by wild animals when no negligence on the part of the defendant is involved, it does not effectively release the defendant from liability based on his own negligence. Quite simply, the general release language does not satisfy the *Barnes* requirement that "the contract must clearly state that the defendant is not responsible for the consequences of his negligence." 128 N.H. at 107, 509 A.2d at 154; *see also Wenzel v. Boyles Galvanizing Co.*, 920 F.2d 778, 781 (11th Cir. 1991) ("A clause simply disclaiming liability in general terms is insufficient to exculpate a party from its own negligence."); *O'Connell v. Walt Disney World Co.*, 413 So. 2d 444, 447 (Fla. Dist. Ct. App. 1982); *Baker v. Stewarts' Inc.*, 433 N.W.2d 706, 709 (Iowa 1988); *Brown v. Racquetball Centers, Inc.*, 534 A.2d 842, 843 (Pa. Super. Ct. 1987). The release fails in this respect not because it neglects to use the word "negligence" or any other special terms; instead it fails because no *particular* attention is called to the notion of releasing the defendant from liability for his own negligence. The general language in the context of the release simply did not put the plaintiff on clear notice of such intent.

In sum, the plaintiff can recover on remand for her injuries only if she proves that the defendant was negligent and that his negligence was the proximate cause of her injuries. In light of the releases, if she is unable to prove such negligence, then she will not be entitled to any recovery.

*Reversed and remanded.*

BROCK, C.J., did not sit; the others concurred.