CLAYTON L. DUNN

v.

CLD PAVING, INC.

August 9, 1995

*Downs Rachlin & Martin, P.C.*, of Littleton (*Gregory S. Clayton* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, CLD Paving, Inc. (CLD), appeals the Superior Court (*O'Neil*, J.) decision that a lease agreement between CLD and the plaintiff, Clayton L. Dunn, required CLD to indemnify Dunn for a negligence lawsuit. We reverse and remand.

Dunn and his wife, Rosemary Dunn, are the sole owners of a garage in Laconia, which they lease to CLD. Dunn is the president of CLD. In 1989, Donald Bosse, a CLD employee, was injured when an oil storage tank exploded at the leased premises. Bosse filed suit against Dunn in his capacity as owner of the premises, claiming that Dunn negligently failed to maintain the garage premises in a reasonably safe condition and failed to warn Bosse of hazards existing on those premises.

Dunn subsequently filed the instant action against his company, CLD, claiming that CLD was obligated to defend him in Bosse's action pursuant to a lease agreement. The agreement, a form lease, describes the subject premises and then, in a handwritten addendum, provides

> that the landlord Clayton Dunn shall have no responsibility from the grounds garages sheds or any of the working areas including the men and equip. owned by CLD Paving Inc. Under this lease agreement CLD Paving Inc. agrees to take responsibility for maintaining the work areas and keeping the grounds presentable to the neighbors. Including no dumping of any hazardous materials on the property.

The trial court ruled, on the pleadings, that although the agreement was "not written in language a lawyer would choose, the agreement places all liability with CLD . . . . [Dunn], as landlord, required CLD . . . to accept all legal liability for the men, equipment, and deleterious effects the business could have on the neighborhood." Holding that the provision was an express indemnity agreement, the court ruled that CLD was required to indemnify Dunn for the defense of the Bosse lawsuit. Although it based its ruling solely on the pleadings, the court allowed Dunn to testify, making a record of "his understanding of the rental agreement in case it was relevant to an appeal."

CLD appealed, contending that its agreement to assume "responsibility" for maintaining the leased premises does not constitute an express indemnity agreement. Dunn cross-appealed, arguing that

the lease provisions "create an implied contractual indemnification for claims arising from a workplace accident where the accident was caused by dangerous conditions created by a CLD employee." Dunn also seeks attorney's fees and costs.

We analyze indemnity provisions in the same way we do other contract provisions. *Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623, 419 A.2d 1111, 1113 (1980). We look to the parties' intent at the time the agreement was made, *id.*, considering "the written agreement, all its provisions, its subject matter, the situation of the parties at the time the agreement was entered into, and the object intended." *R. Zoppo Co., Inc. v. City of Manchester*, 122 N.H. 1109, 1114, 453 A.2d 1311, 1314-15 (1982). Unless the agreement contains ambiguous terms, we limit our review to the four corners of the document itself. *Walsh v. Young*, 139 N.H. 693, 695, 660 A.2d 1139, 1141 (1995) (1995). "[T]he meaning of a contract is ultimately a matter of law for this court to decide." *Restaurant Operators, Inc. v. Jenney*, 128 N.H. 708, 710, 519 A.2d 256, 258 (1986). We construe express indemnity agreements narrowly and will rarely imply them. *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651-52, 392 A.2d 145, 147 (1978).

In New Hampshire, "express language is not necessary to obligate a [party] to protect against injuries resulting from the [other party's] negligence where the parties' intention to afford such protection is clearly evident." *Commercial Union Assurance Co.*, 120 N.H. at 623, 419 A.2d at 1113. In the analogous context of releases, we have imposed "no requirement that the term 'negligence' or any other magic words appear in the release, as long as the language of the release clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence." *Audley v. Melton*, 138 N.H. 416, 418, 640 A.2d 777, 779 (1994) (citation, quotation, and brackets omitted).

The trial court erred when it found that the two handwritten sentences constituted an express indemnity provision. Although not dispositive, no form of the words "indemnity" or "negligence" appear anywhere in the lease agreement or in the handwritten addendum. Absent also are the traditional words used to express indemnity or the release or assumption of legal liability. On their face, the two sentences evince an intent that CLD should be responsible for maintaining the work areas of the leased premises. We cannot conclude that by including the addendum—stating that Dunn "shall have no responsibility from the grounds[,] garages[,] sheds[,] or any of the working areas[,] including the men and

equip[ment] owned by CLD . . ."—the parties "clearly and specifically indicate[d] the intent," *id.*, to require CLD to indemnify Dunn for liability incurred due to an accident such as the one that precipitated the Bosse action. Use of the word "responsible" does not go that far. *See id.* at 418-19, 640 A.2d at 779 (where "no *particular* attention is called to the notion of releasing the defendant from liability for his own negligence," exculpation clause in contract ineffective). Rather than expressing an intent that CLD should hold Dunn harmless, the lease language merely allocates maintenance duties for the leased premises. Accordingly, we reverse the trial court's determination that the contract included an express indemnity provision.

■ Because we conclude that there is no express indemnity provision in the lease agreement, we must consider Dunn's contention that there is an implied duty to indemnify. *See Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320-21, 499 A.2d 999, 1000 (1985). We will rarely imply indemnity. *Id.; Royer Foundry & Mach. Co.*, 118 N.H. at 651-52, 392 A.2d at 147. This disinclination reflects "a simple notion founded in pragmatism and fairness, that those who are negligent should bear responsibility for their negligence." *Collectramatic, Inc.*, 127 N.H. at 321, 499 A.2d at 1000 (quotation omitted).

In *Collectramatic, Inc.*, we noted that we have found implied indemnity in two cases, and stated that

[i]n each case the indemnitor had agreed to perform a service for the indemnitee. In each, the indemnitor was assumed to have performed negligently. And in each, the result was a condition that caused harm to a third person in breach of a non-delegable duty of the indemnitee. In neither was the indemnitee assumed to have been negligent, at least beyond a failure to discover the harmful condition.

*Id.; see also Sears, Roebuck & Co. v. Philip*, 112 N.H. 282, 286, 294 A.2d 211, 213-14 (1972).

■ The trial court found express indemnity based solely on the pleadings and did not consider Dunn's testimony. The court found no facts. Specifically, the court stated that "[i]n order to address [the] question [of implied indemnity], testimony would be necessary to ascertain whether [Dunn] had knowledge of the dangerous condition." We do not find facts in the first instance, especially where to do so would require an evaluation of the credibility of witness testimony. *See, e.g., Carter v. Liberty Mut. Fire Ins. Co.*, 135 N.H. 406, 409, 605 A.2d 221, 222-23 (1992) (issue not resolved by trial

court unripe for appellate review); *Fisk v. Atlantic National Ins. Co.*, 108 N.H. 353, 356, 236 A.2d 688, 691 (1967) (remand necessary where trial court did not make a finding necessary to judgment). Accordingly, we decline to decide whether CLD has an implied duty to indemnify Dunn, and remand the matter to the superior court.

Dunn finally asserts two claims regarding attorney's fees: first, that any indemnity, express or implied, necessarily includes fees and costs in the underlying Bosse action; and second, that such indemnity also includes fees and costs for the present action. Neither claim was passed upon by the trial court; neither appears in Dunn's notice of cross-appeal. As neither issue is properly before us, we decline to rule on them.

*Reversed and remanded.*

All concurred.