Cote v. NH College                    CV-95-308-M 02/11/97

UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW HAMPSHIRE


Marc Cote

       v.                                      Civil No. 95-308-M

New Hampshire College and
Phi Delta Theta Fraternity


                              **O R D E R**


     The plaintiff, Marc Cote, brings a diversity action against

New Hampshire College and Phi Delta Theta Fraternity alleging

tort causes of action arising from serious injuries he received

during a mud volley ball event at the college.  Both defendants

move for summary judgment in their favor.  The motions are

resolved as follows.



                           **STANDARD OF REVIEW**

     Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party first must show the absence of a genuine

issue of material fact for trial.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the

opposing party can avoid summary judgment on issues that it must

prove at trial only by providing properly supported evidence of

disputed material facts that would require trial.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). Disputes of material fact create a trial worthy issue precluding summary judgment only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The court interprets the record in the light most favorable to the nonmoving party, the plaintiff in this case, and resolves all inferences in his favor. MacGlashing v. Dunlop Equipment Co. Inc., 89 F.3d 932, 936 (1st Cir. 1996).

## BACKGROUND

During the spring semester of Marc Cote's junior year at New Hampshire College in 1994, he attended a mud volleyball ("oozeball") tournament. The oozeball tournament was sponsored by the Committee for Activities and Programming Events ("CAPE"), a student organization, and was held on a college field that had been rototilled and flooded to create a wet, muddy playing surface. Before the games began and during the intermissions between games, students played in the muddy area--sliding, kicking mud at each other, pushing and throwing each other and jumping into the mud.[1] Marc Cote was standing on the sidelines

---

[1] The college challenges the record basis for Cote's statements about the students' behavior. As the plaintiff notes in reply, memoranda referenced as "Injury to New Hampshire College Student Marc Cote 4/30/94," prepared by George Miville, Director of Public Safety for the college, and dated May 4, 1994, discuss the students' behavior. The Miville memoranda report, based on interviews with students, that "[p]eople were throwing each other into the mud before the games started" and "jumping into the mud." Deborah Hubbard is reported to have told Miville that she observed students "getting each other muddy, --jumping, sliding, and kicking mud at each other, prior to the start of the

2

watching the activities, drinking a soda, and waiting for a later game that he was scheduled to play. Two friends saw that Cote was in clean clothes and threw him into the mud. A vertebra in Cote's neck was broken in the fall, and he is a quadriplegic as a result of his injury.

The tournament was organized and run by CAPE through student volunteers. It had been a regular student event at the college since before 1989. CAPE is a student organization recognized by the college student government and funded through a mandatory student activities fee. Deborah Hubbard, director of student activities at the college, attended all CAPE meetings and approved CAPE-sponsored events including the oozeball tournament. As a condition of approval, CAPE was required to have a college official present (Hubbard, her assistant, or a paid student manager from the student activities office) who would retain ultimate authority over the event. Each student who planned to participate in the games was required to submit a registration form acknowledging the risks inherent in playing oozeball and releasing the college from liability. The college also required that CAPE have a paramedic in attendance during the tournament.

The mud volley ball "court" was prepared by student volunteers – on this occasion two members of the Phi Delta Theta fraternity rototilled the area. CAPE rented the rototiller, and

_____

games" and the emergency medical technician who was hired to cover the tournament is reported to have said that he "observed that students were diving into the muddy 'oozeball' court prior to the start of the games."

3

the college maintenance department generally oversaw the rototilling. Hubbard and student representatives of CAPE inspected the prepared area to be sure that the preparation was adequate. Hubbard was present during the tournament to oversee the event.

Cote brought suit against the college and Phi Delta Theta fraternity.[2] He alleges that the college failed to properly maintain its premises, failed to properly supervise the tournament, and improperly delegated responsibility for the tournament, an ultrahazardous activity. He also alleges that the fraternity negligently prepared the field and negligently supervised the tournament. He contends that his injuries resulted from the defendants' lack of due care.

## DISCUSSIONS

The fraternity moves for summary judgment on grounds that it did not owe a duty to supervise and control the oozeball tournament or to properly prepare the oozeball playing area. Cote agrees that the fraternity had no supervisory duty as it is now clear that the fraternity was not a sponsor of the tournament, but he maintains his claim that the fraternity undertook to prepare the playing area and thus had a duty to do it properly. The college raises a variety of defenses. The fraternity's motion for summary judgment is addressed first.

_____

[2] Originally, Cote also sued Kappa Sigma fraternity but his claims against that fraternity were later dismissed by stipulation.

4

## A. Phi Delta Theta Fraternity's Motion for Summary Judgment

The fraternity contends that <u>it</u> owed no duty to properly rototil the oozeball field. The parties agree that the fraternity did not sponsor or officially participate in the tournament. They also agree that the individuals who rototilled the oozeball field were fraternity members. The fraternity is vicariously liable for the actions of its two individual members only if those members were acting on behalf of the fraternity as its servants or agents. See <u>Boissonnault v. Bristol Federated Church</u>, 138 N.H. 476, 477-78 (1994). The fraternity contends, however, that the individuals volunteered under the auspices of CAPE in their capacity as students, not on behalf of the fraternity, and as a result the fraternity argues that it is not vicariously liable for their actions. The capacity of a volunteer is determined by considering the totality of the circumstances including criteria set out in the Restatement (Second) of Agency § 220 (1958) without emphasizing the control factor. <u>Id.</u> at 478 (citing <u>Hunter v. R.G. Watkins & Son, Inc.</u>, 110 N.H. 243 (1970)).

An extensive analysis of the alleged circumstances surrounding the fraternity members' volunteered service is unnecessary in this case as a material factual dispute appears in the record. In her deposition, Deborah Hubbard stated that the fraternity was asked for volunteers to rototil the field and that two individuals volunteered as members of the fraternity, not as individual students. Although the fraternity now states that it

5

"did not, as an organization, help CAPE to rototil or maintain the mud of the oozeball court," its mere denial does not finally establish the legal capacity in which the individuals acted at the time they participated. Accordingly, on the facts presented here, a genuine dispute exists as to a material fact, which precludes summary judgment in favor of the fraternity on this issue.

## B. The College's Motion for Summary Judgment

In support of its motion for summary judgment, the college first asserts that it owed no duty to Marc Cote to control or supervise activities at the oozeball tournament. In addition, the college invokes defenses based on New Hampshire's recreational use and other immunity statutes and asserts that the waiver form, which Cote signed, released the college from liability. The college also challenges Cote's claim that the college impermissibly delegated its duty to protect its students from oozeball as an ultrahazardous activity.

### 1. College's Duty to Control or Supervise Tournament

The college contends that it had no duty, as a college, to control or supervise student activities such as the oozeball tournament, which was sponsored by CAPE,[3] and that it did not

---

[3] CAPE is not a party to this suit. The parties do not address CAPE's legal status nor its relationship to the college and plaintiff has not asserted a claim that the college is vicariously liable for any negligence by CAPE.

undertake or assume such a duty.  Absent a duty, the college cannot be negligent.  Trull v. Town of Conway, 140 N.H. 579, 581 (1995).  In general, no affirmative duty exists that obligates one person to protect another.  Walls v. Oxford Management Co., 137 N.H. 653, 656 (1993).  However, a duty not otherwise owed may be assumed if one "'voluntarily undertake[s] to perform specific duties for a special class of persons, including the plaintiff, at particular times and places so as to induce a justifiable reliance on that service by the plaintiff.'"  Trull, 140 N.H. at 583 (quoting Hartman v. Town of Hooksett, 125 N.H. 34, 37 (1984)).  One who voluntarily assumes a duty "thereafter has a duty to act with reasonable care."  Walls at 659.

Despite the college's protestations to the contrary, the record discloses a genuine dispute as to a material fact: whether the college assumed a duty to supervise and control the oozeball tournament.  The college gave its approval for the event to be held on college property, conditioned on CAPE's compliance with the college's requirements and exercise by it of at least some level of supervision.  For example, the college imposed a "no alcohol" policy based on past experience with alcohol consumption during the tournament; it required the presence of a paramedic and a college official, in this case, the director of student activities, to supervise[4] the activity, and all players had to

---

[4]  The college disputes that Deborah Hubbard had supervisory authority at the tournament and, instead, contends that she "was present generally to oversee the event because it was being held on college property."  The college does not explain what it understands Hubbard's role in overseeing the event to have been.

7

sign a waiver form, purporting to release the college from liability for injuries, before participating. The college maintenance department was also involved in overseeing preparation of the oozeball site.

The college's involvement in the tournament, particularly its requirement that a college officer be present to supervise the activity, distinguishes this case from others in which colleges, universities, and fraternities have not played an active role in challenged events and have not been found to have had a general duty to protect students or members. See, e.g., Bradshaw v. Rawlings, 612 F.2d 135 (3d Cir. 1979), cert. denied, 446 U.S. 909 (1980); Albano v. Colby College, 822 F. Supp. 840, 841-42 (D. Me. 1993); Hartman v. Bethany College, 778 F. Supp. 286, 291 (N.D. W.Va. 1991); University of Denver v. Whitlock, 744 P.2d 54, 57-59 (Colo. 1987); Furek v. University of Delaware, 594 A.2d 506 (Del. Super. Ct. 1991); Fisher v. Northwestern State University, 624 So.2d 1308, 1311 (La.Ct.App. 1993), writ denied, 631 So.2d 452 (La. 1994); Hughes v. Beta Upsilon Bldg. Ass'n, 619 A.2d 525, 527 (Me. 1993); Mullins v. Pine Manor College, 449 N.E.2d 331, 335 (Mass. 1983). In contrast, Cote's claim is that

---

Based on Hubbard's deposition testimony, however, she equates responsibility with overseeing an event, and she agreed that she would have had ultimate supervisory authority over any event that she attended in her official college capacity. In addition, she stated that she would have stopped people from throwing others into the mud during the tournament if she had seen it happening.

8

the college negligently performed an assumed duty to reasonably supervise the students during the tournament.[5]

## 2. College's Liability as Owner of the Oozeball Field

Owners of land are required to exercise "reasonable care under all the circumstances in the maintenance and operation of their property." Paquette v. Joyce, 117 N.H. 832, 837 (1977) (citing Ouellette v. Blanchard, 116 N.H. 552 (1976)). The college agrees that it had a legal duty as owner of the oozeball field not to allow an unreasonably dangerous condition to exist on its property. The college asserts, however, that the oozeball court, under these circumstances, was not an unreasonably dangerous condition.

The plaintiff, as the nonmoving party with the burden of proof at trial on the issue of landowner liability, must point to properly supported facts in the record that show a genuine issue of material fact as to whether the college maintained an unreasonably dangerous condition on its property. See Celotex, 477 U.S. at 322. As the plaintiff has not addressed the landowner liability issue beyond stating that the college owed a duty as landowner, summary judgment is appropriate if a rational

---

[5] The nature and extent of the college's assumed duty remains undefined. In addition, whether Cote can show that he "reasonably relied" on the college's assumption of a duty to supervise the tournament for his safety, or whether the college breached any assumed duty, or whether any breach proximately caused Cote's injury are issues that have not been raised in the present motion and accordingly are not addressed.

9

jury could not find that the college allowed an unreasonably dangerous condition on the facts presented. See R.W. International Corp. v. Welch Foods, Inc., 88 F.3d 49, 53 (1st Cir. 1996).

The college asserts that it used reasonable care and cites its years of experience with oozeball tournaments during which it provided the same supervision, and with fields prepared the same way without incident, and states that it was unaware of any dangerous condition in the preparation of the oozeball court. The college also refers to letters from other colleges and universities demonstrating their experience with mud volleyball as a nondangerous event. In fact, the plaintiff acknowledges that his own expert testified upon deposition that mud volleyball itself is not particularly dangerous. Because no rational jury could find, on the record presented for summary judgment, that the college allowed an unreasonably dangerous condition to exist on its property by permitting the construction and use of the oozeball field, summary judgment is properly granted in the college's favor on count one.

Similarly, the plaintiff has failed to demonstrate a trial worthy issue on his claim in count three that the college impermissibly delegated responsibility for the oozeball tournament to CAPE. Under New Hampshire law, responsibility for an inherently dangerous activity is indeed not delegable to others. Elliott v. Public Service Co. of N.H., 128 N.H. 676, 678-81 (1986). But an activity is inherently dangerous only if

10

it is "dangerous in and of itself and not dangerous simply because of the negligent performance of the [activity]." Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 466 (1995); accord Richmond v. White Mountain Recreation Association, Inc., 140 N.H. 755, 759 (1996). The plaintiff offers no factual support for his claim that oozeball is "inherently dangerous" and the record reveals none. Consequently, summary judgment on count three is granted in the college's favor. See CMM Cable REP, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1512 (1st Cir. 1996).

### 3. Statutory Defenses

The college invokes the immunities provided to land owners by the New Hampshire recreational use statutes and to nonprofit organizations by the charitable immunity statute. N.H. Rev. Stat. Ann. §§ 212:34, 508:14, 508:17. The recreational use statutes, §§ 212:34[6] and 508:14,[7] limit the liability of

---

[6] I. An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, trapping, camping, water sports, winter sports or OHRVs as defined in RSA 215-A, hiking, sightseeing, or removal of fuelwood, or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in paragraph III hereof.

II. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, use OHRVs as defined in RSA 215-A, sightsee upon, or remove fuelwood from, such premises, or use said premises for water sports, or winter sports does not thereby: . . . .

11

landowners under certain conditions, in derogation of the common law, and must, therefore, be narrowly construed. <u>Collins v. Martella</u>, 17 F.3d 1, 4 (1st Cir. 1994) (construing New Hampshire law).

### a. Section 212:34

The college contends that oozeball is a <u>water</u> sport within the meaning of § 212:34. Considering the use of the term "water sports" in its statutory context and in light of the other sports listed (hunting, fishing, trapping, camping, winter sports, and OHRVs) oozeball does not fit. In fact, oozeball, or mud volleyball, is obviously less a "water" sport than it is an "earth" sport. Section 212:34 is literally inapplicable to this case.

### b. Section 508:14

Section 508:14 provides immunity from liability for negligence to landowners with regard to claims arising from gratuitous use of their land for recreational purposes. The recreational use statute does not, however, provide blanket immunity from liability to landowners without regard to the

---

[7] I. An owner, occupant, or lessee of land, including the state or any political subdivision, who without charge permits any person to use land for recreational purposes or as a spectator of recreational activity, shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage.

12

nature of the claim. See King v. King, No. 94-140-SD, slip op. (D.N.H. Sept. 11, 1995); but see Palmer v. United States, 945 F.2d 1134, 1137-38 (9th Cir. 1991) (Hawaii's recreational use statute barred claim that government assumed duty of reasonable care at swimming pool). Whether Cote's remaining claim against the college, asserting a theory of liability based on negligent supervision of the tournament, is sufficiently distinct from the college's role as landowner to escape the recreational use statute's immunity provision depends on the specific duty the college assumed. The parties' arguments and the record provide an insufficient basis upon which to rule, as a matter of law, that the college did or did not assume a duty beyond the reach of the recreational use statute.

In addition, Cote asserts that use of the college's field for the tournament was not gratuitous. Only students and their guests were allowed to attend or participate in the tournament, and Cote was a student of the college. As a student, he had paid room and board and student activities fees to the college that entitled him to use college facilities and participate in college events. The oozeball tournament was funded through the students' activities fees. The college responds that the students' activities fees were provided to CAPE and spent by CAPE for the tournament and that the college neither charged nor received payment for the use of the field.

The status of players as New Hampshire College students determined their eligibility to participate in the tournament,

13

which fact readily distinguishes this situation from one in which the property is used by the general public. Cf. Weller v. Colleges of the Senecas, 635 N.Y.S.2d 990, 994 (N.Y. App. Div. 1995) (recreational use statute immunized college from liability for student's injury while riding on path open to public). The tournament was apparently not a public event. As a result, use of the college's field for the tournament was not truly gratuitous, even though a specific targeted fee was not charged by or paid to the college for the activity. Under the peculiar circumstances of this case, and given its current posture, the court cannot yet conclude as a matter of law that the college is or is not entitled to the immunity provided by the recreational use statute on summary judgment. The relevant facts are not clearly established either way.

### c.   Section 508:17

The charitable immunity statute, § 508:17, II, limits the liability of a nonprofit organization relative to claims "alleging negligence on the part of an organization volunteer." Assuming that the college would qualify as a nonprofit organization within the meaning of the statute, Deborah Hubbard, the person through whom the college is alleged to have acted or failed to act, was a paid college officer, not a volunteer, when she attended the tournament as director of student activities. Cote's negligent supervision theory is based on Hubbard's alleged

14

breach of duty, not CAPE's actions or inactions.  Thus, the college is not entitled to that statutory protection.

### 4. The Waiver Form

The college asserts that Cote released it from liability by signing a waiver form, which was required of all students participating in the oozeball games.  The form provides as follows:

> The game of Oozeball has inherent physical risks as other sporting events.  A requirement of playing Oozeball is that each players [sic] have medical insurance that would cover the player in the event of an injury.  Should you be injured while playing Oozeball, signing this form releases New Hampshire College from all liabilities related to the playing of Oozeball.

Under New Hampshire law, exculpatory contracts or releases may be enforced only if they do not contravene public policy and the agreement clearly states that a potential defendant is not responsible for the consequences of his or her own negligence, so that a reasonable person in the plaintiff's position would have understood the exculpatory effect.  Barnes v. New Hampshire Karting Association, 128 N.H. 102, 107 (1986); accord Wright v. Loon Mountain Recreation Corp., 140 N.H. 166, 168 (1995).  Public policy will preclude enforcement of releases under particular circumstances, such as when a special relationship exists between the parties, when a disparity of bargaining power exists, when the defendant holds exclusive control over the service involved, or when the service is a matter of practical necessity.  Audley v. Melton, 138 N.H. 416, 418 (1994).  Exculpatory agreements are

15

strictly construed against the defendant so that, to be effective, the exculpatory language must be clear and specific. Id.

Even assuming that the college's required release does not contravene public policy, it still appears that the language of the form signed by Cote does not apply to the circumstances as pled or the injury he received. The form by its terms releases the college from liability for injury Cote might have received as a result of participation in an oozeball game. Deborah Hubbard testified in her deposition that the waiver form was intended to release the college from liability for injuries received by players while playing the game. Cote was not injured while playing in an oozeball game, although he did plan to play eventually. Instead, he was injured when, while standing on the sidelines as a spectator – waiting to watch the next game, two friends spontaneously grabbed him and threw him into the mud (accepting plaintiff's assertions as true). Given the requirement of a clear statement of the scope of defendant's intent to be released from liability, the form Cote signed is not applicable to his injury here and does not operate to release the college from liability for any negligence on its part that may have substantially contributed to cause his injury.

### 5. Assumption of the Risk

The college asks that this court adopt the doctrine of primary assumption of the risk, followed in other jurisdictions

16

but not in New Hampshire. A federal court applying state law must "take state law as it finds it: `not as it might conceivably be, some day; nor even as it should be.'" <u>Kassel v. Gannett Co.</u>, 875 F.2d 935, 950 (1st Cir. 1989) (quoting <u>Plummer v. Abbott Laboratories</u>, 568 F.Supp. 920, 927 (D.R.I. 1983)). The college acknowledges that the New Hampshire Supreme Court has rejected the doctrine of assumption of the risk. <u>Bolduc v. Crain</u>, 104 N.H. 163, 166-68 (1962); <u>accord</u> <u>Nutbrown v. Mount Cranmore, Inc.</u>, 140 N.H. 675, 681-82 (1996). Accordingly, New Hampshire law governs, and the defense is not available here.

## CONCLUSION

Phi Delta Theta's motion for summary judgment (document no. 30) is granted as to its role as a sponsor of the tournament, but denied as to its vicarious liability for the actions of its two members. New Hampshire College's motion for summary judgment (document no. 27) is granted as to Count I (failure to maintain premises) and Count III (delegation of responsibility for an ultrahazardous activity) and is otherwise denied.

17

         SO ORDERED.


                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge


February 11, 1997

cc:   Andrew D. Dunn, Esq.
      Kenneth G. Bouchard, Esq.
      Jeffrey B. Osburn, Esq.