**Denise D. BAKER, Appellant,**

v.

**STEWARTS' INC. d/b/a Stewart Schools of Hairstyling, Appellee.**

No. 88–124.

Supreme Court of Iowa.

Dec. 21, 1988.

Michael G. Reilly of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellant.

Thomas A. Gleason, Omaha, Neb., and Joseph B. Reedy, Council Bluffs, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Denise D. Baker, appeals from a summary judgment granted in favor of the defendant, Stewarts' Inc., a cosmetology school, in an action alleging negligent application of a chemical solution in the styling of plaintiff's hair. Upon our review of the record, we conclude that the granting of summary judgment was improper and reverse and remand the case for further proceedings.

For purposes of the motion for summary judgment, the pleadings and motion papers, viewed most favorably to plaintiff, reveal the following facts incident to her claim. On November 29, 1986, plaintiff went to defendant's place of business and requested that her hair be straightened. Before receiving the service requested, she was presented with a written waiver provided by the defendant. This form as completed and signed by plaintiff, provided:

I, Baker, Denise ... do hereby acknowledge that this is a student training facility and thus there is a price consideration less than would be charged in a salon.

Therefore, I will not hold the Stewart School, its management, owners, agents, or students liable for any damage or injury, should any result from this service.

The student assigned to perform services for the plaintiff was supervised by two instructors, both licensed cosmetologists. The initial application of a chemical straightening product to plaintiff's hair failed to produce the desired results. The student then applied a second and stronger chemical product.

Within a day of receiving these chemical applications, plaintiff began to suffer hair loss which continued until she had large bald patches on her scalp. She contends this condition resulted from the student negligently leaving the straightening solutions on her hair for a period of time exceeding that recommended by the manufacturer, and from negligent supervision of the student by her instructors.

In granting defendant's motion for summary judgment, the trial court concluded that, assuming the student's services were negligent, the exculpatory agreement executed by the plaintiff barred recovery. Plaintiff appeals from that ruling, contending the exculpatory agreement should be declared to be against public policy. In the alternative, plaintiff urges the exculpatory agreement should not be interpreted as shielding defendant from liability for the type of injury which occurred in the present case. Both of plaintiff's contentions involve issues of law, and we review the trial court's order in that light.

We have held in other situations that, ordinarily, persons may execute valid contracts exempting others from liability for their negligent conduct. *See, e.g., Farmers Elevator Co. v. Chicago, R.I. & P. R.R.,* 260 Iowa 478, 483, 149 N.W.2d 867, 870 (1967) (upholding agreement absolving railroad from liability for damage to elevator scale by operation of trains); *Bashford v. Slater,* 250 Iowa 857, 865, 96 N.W.2d 904, 909 (1959) (upholding agreement releasing racing association from liability sustained by spectators and other persons); *Weik v. Ace Rents,* 249 Iowa 510, 515, 87

N.W.2d 314, 317–18 (1958) (upholding clause in equipment rental agreement limiting the owner's liability for damages arising out of use of equipment); *Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 587, 81 N.W.2d 462, 465 (1957).

Plaintiff contends that exculpatory agreements should be declared invalid if applied to services of a professional nature. She suggests that in such situations consumers are required to submit to the complete control of providers in order to obtain the services involved. That circumstance, plaintiff urges, impresses the transaction with a public interest.

We have stated that the term "public policy" is not capable of exact definition. *Walker v. American Family Mut. Ins. Co.,* 340 N.W.2d 599, 601 (Iowa 1983). However, the crux of the principle is that "a court ought not enforce a contract which tends to be injurious to the public or contrary to the public good." *Id.* at 601. We have indicated that we will not "curtail the liberty to contract by enabling parties to escape their valid contractual obligation on the ground of public policy unless the preservation of the general public welfare imperatively so demands." *Tschirgi v. Merchants Nat'l Bank of Cedar Rapids,* 253 Iowa 682, 690, 113 N.W.2d 226, 231 (1962).

Some courts have recognized that public policy prevents enforcement of exculpatory agreements where the party seeking to be exculpated is a professional person pursuing a profession subject to licensure by the state, and is rendering a service of great importance to the public. For example, courts have refused to enforce a patient's agreement exculpating a physician from liability for future negligent performance of medical treatment. *E.g., Belshaw v. Feinstein,* 258 Cal.App.2d 711, 726, 65 Cal. Rptr. 788, 798 (1968); *Olson v. Molzen,* 558 S.W.2d 429, 432 (Tenn.1977). The extension of this principle to transactions by "tradesmen in the market place" has been rejected. *E.g., Parton v. Mark Pirtle Oldsmobile–Cadillac–Isuzu, Inc.,* 730 S.W. 2d 634, 636 (Tenn.App.1987) (upholding enforcement of clause in contract for auto

repairs that exculpated dealership for loss or damage to vehicle in case of fire or theft).

It is recognized that the status of the party seeking exculpation affects the validity of an exculpatory agreement. As one commentator has observed:

[S]ome relationships are such that once entered upon they involve a status requiring of one party greater responsibility than that required of the ordinary person, and, therefore, a provision avoiding liability is peculiarly obnoxious.

S. Williston, *Contracts* § 1751, at 148 (3d ed. 1972). The finding of a special relationship led a California court to hold that a hospital could not enforce a release from future liability executed as a condition of admission. *Tunkl v. Regents of Univ. of Cal.,* 60 Cal.2d 92, 383 P.2d 441, 32 Cal. Rptr. 33 (1963). The *Tunkl* court set forth a number of factors to determine whether a contract was one affected with a public interest, including whether (1) it concerns business of a type subject to public regulation, (2) the party seeking exculpation performs a service of great importance to the public which is of practical necessity for at least some members of the public, (3) that party holds itself out as willing to perform the service for any member of the public who seeks it, (4) due to the essential nature of the service the party possesses a decisive advantage in bargaining power, (5) the exculpatory clause appears in a standardized adhesion contract, and (6) the purchaser is placed under the control of the seller and is thus subject to the risk of carelessness by the seller or its employees. 60 Cal.2d at 98–101, 383 P.2d at 444–46, 32 Cal.Rptr. at 36–38.

Applying the same or similar criteria, courts in at least three jurisdictions have enforced exculpatory agreements against the patrons of cosmetology schools claiming to have been injured by the negligence of students. *Henry v. Mansfield Beauty Academy,* 353 Mass. 507, 510–11, 233 N.E. 2d 22, 24 (1968); *Wolinsky v. Queens Beauty Inst., Inc.,* 56 Misc.2d 596, 600, 289 N.Y.S.2d 647, 651 (N.Y.Civ.Ct.1968); *Dixon v. Manier,* 545 S.W.2d 948, 950 (Tenn.App.

1976). Similar conclusions have been reached with respect to exculpatory agreements executed by patrons of health clubs and spas. *E.g., Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 926 (Minn.1982) (determining that a health club is not a business offering an essential service or burdened with a great public interest); *Bers v. Chicago Health Clubs, Inc.,* 11 Ill.App.3d 590, 297 N.E.2d 360 (1973).

Defendant urges us to follow those authorities which have upheld the validity of agreements relieving cosmetology schools from liability to patrons for the actions of student practitioners. It suggests that students must be exposed to a certain amount of practical "hands on" experience in order to successfully complete the instructional course. It urges that absent the protection sought to be obtained through the exculpatory agreement a cosmetology school cannot risk permitting students to work on members of the public.

Although defendant's argument provides a policy rationale for exempting the students from liability for negligence and for exempting the cosmetology school from vicarious liability for the students' negligence, it fails, we believe, to present a rationale for exempting the school from liability for negligence of supervisory personnel. Plaintiff's claims in the present case are broad enough to include alleged instructor negligence as a cause of her injury.

For purposes of deciding the present appeal, we do not find it necessary to determine whether an agreement absolving a cosmetology school from liability to its patrons for the negligence of its supervisory personnel is, under some circumstances, valid. Under established rules of construction pertaining to exculpatory agreements, we find the agreement in the present case to be insufficient to provide such an exclusion. We discussed this issue as follows in *Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957):

While defendants concede it is not ordinarily contrary to public policy for parties to contract for freedom from liability for negligence, they properly remind us

that the issue here is whether this lease contains such a contract.

II. In most cases contract provisions that are subject to construction, which a party claims relieve him from liability for his own negligence, particularly active negligence, are strictly construed against him. They are not held to cover such negligence unless the intention to do so is clearly expressed.

*Id.* at 588, 81 N.W.2d at 465 (citations omitted). The rule of construction espoused in the *Poling* case was referred to and applied in the later decision of *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 916–17 (Iowa 1975), involving indemnity agreements.

In reviewing the language of the exculpatory clause at issue in the present case, we do not believe that it would be apparent to the casual reader asked to sign this form as a condition for receiving cosmetology services that its effect was to absolve the establishment from liability based upon the acts or omissions of its professional staff. To construe the agreement in this light would be contrary to the requirement recognized in the *Poling* and *Evans* cases that such intention must be clearly and unequivocally expressed.

We hold that the district court erred in granting summary judgment for defendant on the basis of the exculpatory agreement as to acts of defendant's professional staff. The judgment of the district court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.