# IN THE COURT OF APPEALS OF IOWA

No. 17-1922
Filed January 9, 2019

**MICHAEL L. CUPPS,**
        Plaintiff-Appellant,

**vs.**

**S & J TUBE, INC.,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Louisa County, Michael J. Schilling,

Judge.

Michael Cupps appeals the district court's grant of the defendant's motion

for summary judgment. **AFFIRMED.**

John D. Simmons of Hupy & Abraham, SC PC, Davenport, for appellant.

Timothy D. Roberts of Anderson, Roberts, Porth, Wallace & Stewart LLP,

Burlington, for appellee.

Heard by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019)

**DANILSON, Senior Judge.**

Michael Cupps appeals the district court's grant of the defendant's motion for summary judgment. Cupps contends the district court erred in granting summary judgment because the employment application he signed is not a contract. Alternatively, Cupps contends the exculpatory clause contained in the application is invalid because it does not certainly and unequivocally state the signer is waiving claims for negligence, or, even if the exculpatory clause is valid, Cupps's injury was not a "work-related injury" within the meaning of the contract. Because we conclude a binding contract existed between the parties and Team Staffing Solutions, Inc.'s ("TSS") offer for employment encompassed the terms and conditions set forth in the job application document, Cupps was bound to its terms when he accepted employment from TSS. Further, the exculpatory clause clearly and unequivocally alerted the signer that he or she is waiving any claim for damage, including damages caused by negligence, and the injury was work-related. We affirm.

**I. Background Facts and Proceedings.**

Cupps was injured when he slipped and fell on an area of snow and ice outside a property maintained by S & J Tube, Inc. ("S & J"). Cupps was an employee of S & J at the time of the incident. Cupps alleges S & J was negligent in the maintenance of the subject property.

Cupps initially sought employment directly through S & J but was referred to TSS. S & J does nearly all its hiring through temporary agencies, including TSS. TSS recruits candidates for hire, interviews them, assesses their skill, places them with customers (employers such as S & J), pays the workers' weekly wages,

processes all withholdings, prepares and mails W-2s, maintains employee records, maintains workers' compensation insurance, and assumes liability for unemployment claims. In exchange for its services, TSS receives a mark-up on wages paid by its customers. In other words, TSS's customers pay TSS for the employee's time, and TSS pays the employee a portion of that amount.

TSS requires each prospective employee to execute a document titled, "Application for Employment—Understanding and Agreement as to Application Terms and Conditions." Cupps completed the entire employment application with TSS, which contained the following "legal remedies" clause:

> I acknowledge and agree that even though my work related activities may be under the control and direction of the Customer [S & J], my sole legal remedies in the event of a work related injury will be the Company's [TSS's] workers' compensation insurance and will not include any claim for damage against that Customer.

Cupps signed this application under a paragraph stating the following: "My signature below certifies that I have read, understand and agree to abide by the conditions set forth. By signing this document, I agree to these terms and conditions, whether or not I am employed by Team Staffing Solutions, Inc." Cupps was then hired by TSS to be a welder for S & J on a "temp-to-hire" basis.

Cupps gave a one-week notice of resignation to S & J, effective December 20, 2013. On December 20, 2013, at or near the end of his shift, Cupps cleaned his work area and carried his welding gear outside to his vehicle. He did not seek nor receive permission to leave the workplace to go to his vehicle. While he was walking in a grassy area outside the building, Cupps slipped, fell, and was injured. Cupps was still on the clock and being paid at the time of his injury. Cupps's injury

was recorded on S & J's injury log, and he received workers' compensation benefits from TSS.

Cupps filed a lawsuit in November 2015, alleging S & J's negligence caused him to slip, fall, and become injured. S & J filed a motion for summary judgment asserting Cupps could not bring his suit because he agreed when he executed the employment application with TSS that his legal remedies for work-related injuries were limited to a claim for workers' compensation benefits. S & J argued that when Cupps was injured he was on the clock and being paid; thus, his injury was work-related, and his sole remedy was workers' compensation benefits.

In his resistance to the motion, Cupps contended the employment application was not a contract, or, alternatively, the exculpatory clause therein was invalid, and the term "work-related injury" was ambiguous and did not apply to Cupps's injury because he was outside the building without permission when he fell. The district court concluded the employment agreement was a valid contract, the exculpatory clause was valid, and Cupps's injury was work-related and granted S & J's motion for summary judgment.

Cupps appeals.

## II. Scope and Standards of Review.

We review a district court ruling on a motion for summary judgment for correction of errors at law. *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted). "Summary judgment is properly granted where the only controversy is the legal effect of the undisputed

facts." *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000). "When the facts are not in dispute, we will simply decide whether the district court correctly applied the law to the undisputed facts before us." *Id.*

**III. Discussion.**

As a preliminary matter, we address an issue with the form of Cupps's brief. Iowa Rule of Appellate Procedure 6.903(2) sets forth the form and content requirements for the appellant's brief on appeal. S & J notes in its brief that Cupps failed to address how the issues were preserved for appellate review and failed to provide references to the record where the issues were raised and decided, as required by rule 6.903(2)(g)(1). S & J does not contest error was preserved. In his reply brief, Cupps contends error was preserved by his resistance to the motion for summary judgment and by his motion to reconsider.

Cupps's brief is not strictly compliant with the rule. Failure to conform to the rule governing the form of an appeal brief is a ground for dismissal of the appeal. *Carlson v. Bankers Trust Co.*, 50 N.W.2d 1, 3 (Iowa 1951). But, it is our duty to dispose of appeals on their merits whenever it can be done without injustice to the complaining party. *See Agans v. Gen. Mills*, 48 N.W.2d 242, 243 (Iowa 1951). Here, because S & J is not contesting error was preserved, and it appears from the record error was preserved on all issues, there is no injustice to S & J in deciding the appeal on the merits.

*A. Employment Application as a Contract*

Cupps contends the employment application fails as a contract for lack of consideration. Cupps maintains the terms of the agreement itself evidence the parties' intent and the lack of a bargained-for exchange of promises.

Generally, we presume a written and signed agreement is supported by consideration. *Margeson v. Artis*, 776 N.W.2d 652, 656 (Iowa 2009). Thus, a party asserting a contract lacked consideration has the burden to prove the deficiency. *Id.* We look for consideration from the language in the contract and by what the parties contemplated at the time the instrument was executed. *Id.*

To support his claim the agreement was not supported by consideration, Cupps directs us to the following paragraph of the agreement:

> **Limitation of Employment Application:** I understand, acknowledge and agree that nothing contained in this Application for Employment or in the granting of an interview creates either an express or implied contract between Team Staffing Solutions, Inc., and myself for either employment or for the provision of any benefit. I understand, acknowledge and agree that any employment relationship with Team Staffing Solutions, Inc., is of an "at-will" nature, which means that I may resign at any time for any reason and [illegible] the Company may terminate my employment at any time. I further understand that this "at-will" employment relationship may [not] be changed by any written document or conduct unless such change is specifically acknowledged in writing by an officer of the Company.

Cupps argues this language expresses a lack of intent between the parties to bargain for any promises or performance in the employment application. We disagree. This language operates to inform the signer that the agreement does not create a contract "for employment or for the provision of any benefit." If we read the paragraph the way Cupps asks, it would render much of the employment application superfluous and meaningless.

Cupps also argues the application is not a contract because his signing the contract did not obligate TSS to provide Cupps with an interview or a job. We agree the job application only constituted a solicitation or invitation of an offer. *See Heartland Express, Inc., v. Terry*, 631 N.W.2d 260, 270 (Iowa 2001) (citing *Harden*

*v. Maybelline Sales Corp.*, 282 Cal. Rptr. 96, 99 (Cal. Ct. App. 1991) ("[A]n application for employment is not a contract; it is a mere solicitation of an offer of employment.")); *see generally* 1 Timothy Murray et al., Corbin on Contracts § 2.3 (Matthew Bender ed., rev. ed. 2018) ("Request for an offer is not an offer."). However, TSS did, in fact, consider Cupps for a position, hire him, and place him with S & J. "[A] promise made by one party to a contract normally cannot be enforced by the other party to the contract unless the party to whom the promise was made provided some promise *or performance* in exchange for the promise sought to be enforced." *Margeson*, 776 N.W.2d at 656 (emphasis added).

Once TSS offered Cupps a position, there was an offer, and when Cupps accepted the offer of employment there was a binding contract between them. The employment application included an "understanding and agreement as to application terms and conditions." This portion of the document provided the terms of any offer tendered by TSS. Further, Cupps executed the document stating that he understood those terms and conditions and agreed to them. Thus, once Cupps was informed of an offer of employment, he should have understood the offer was made on the condition that he was to comply with the terms and conditions set out in the "understanding and agreement as to terms and conditions." Terms of employment made known to an employee are binding upon the employee. *See Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 862 (S.D. Ohio 2003). ("In other words, by performing the requested services, at-will employees are bound by the whole package of the employer's offer, which includes not only the agreed-upon remuneration, but also any other term or condition of employment made known by

the employer."). Here, Cupps knew the terms and conditions of employment before he accepted the offer.

Cupps signed the employment application because he wanted TSS to help him secure employment. TSS evaluated Cupps's application, hired him, and placed him with S & J. TSS performed what Cupps sought in the bargain. Although we do not agree with the district court that the application for employment was a valid contract, we have no difficulty concluding the subsequent job offer was conditioned upon the terms and conditions in the written agreement Cupps executed, and a valid contract existed when he accepted employment from TSS.

*B. Validity of the Exculpatory Clause*

Cupps alternatively argues the exculpatory clause contained within the contract is invalid because it does not alert the casual reader in clear and unequivocal terms that the signer is waiving claims for negligence.

Our supreme court has said that exculpatory clauses must contain "clear and unequivocal language that would notify a casual reader that by signing the document, a [signer] would be waiving all claims relating to future acts or omissions of negligence." *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 878–79 (Iowa 2009). Failure to do so renders the clause invalid and unenforceable. *See id.* at 880. Our courts have *not* required valid exculpatory clauses to use the word "negligence."[1] *See id.* at 879–80; *Baker v. Stewarts' Inc.*, 433 N.W.2d 706, 709 (Iowa 1988); *Hargrave v. Grain Processing Corp.*, No. 14-1197, 2015 WL 1331706, at *3 (Iowa Ct. App. Mar. 25, 2015).

---

[1] Cupps incorrectly asserts *Sweeney* held the use of the word "negligence" is required for an exculpatory clause to be valid.

In *Hargrave*, our court considered language nearly identical to the language challenged in the present case. Hargrave was injured while working and received workers' compensation for his injuries. *Hargrave*, 2015 WL 1331706, at *1. He brought claims of negligence and premises liability against the employer. *Id.* The district court concluded it was "impossible to interpret the 'Legal Remedies' provision in a way that allows Mr. Hargrave to bring claims against [the employer] that result from his work-related injuries," noting the provision stated his legal remedies "will not include *any* claim for damage against [the employer]." *Id.* Our court affirmed the district court's grant of summary judgment based on the terms of the exculpatory clause. *Id.* at *3.

The language of the present exculpatory clause, nearly identical to that used in *Hargrave*, is clear and unequivocal. Cupps acknowledged and agreed his "sole remedies in the event of a work-related injury" would be TSS's workers' compensation coverage and "[would] not include any claim for damage against [S & J]."[2] In considering the phrase "any claim for damage," we are mindful that contract "[i]nterpretation is the process for determining the meaning of the words used by the parties in a contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Id.* at

---

[2] We also note that here Cupps was not prevented from recovering for his injury. In *Sweeney* and *Baker*, the exculpatory clauses purported to relieve all liability and would have left the injured parties without any remedy. Here, the exculpatory clause does not extinguish all remedies but directs that Cupps's sole remedy will be workers' compensation benefits, which he admitted he received in a settlement. *See Kelly v. Riser, Inc.*, No. 11-1898, 2012 WL 5356104, at *3 (Iowa Ct. App. Oct. 31, 2012) (distinguishing the reasoning of *Sweeney* where the exculpatory clause does not prevent recovery but directs recovery to workers' compensation).

437; *see also Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011). Unless the contract contains an ambiguity, we determine the parties' intent from the language of the contract alone and enforce it as written. *Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 306 (Iowa 1998).

Here, the phrase "any claim for damage" is not ambiguous. The phrase clearly means that if the signer suffers a work-related injury, the only remedy is TSS's workers' compensation and the remedies do not include any claim for damage, including negligence, against TSS's customers such as S & J. A casual reader would reach the same conclusion. Thus, the district court correctly concluded the legal remedies clause of the employment agreement is a valid exculpatory clause.[3]

*C. Whether the Injuries were "Work Related"*

Cupps also contends that the injuries he suffered were not "work-related injuries" within the meaning of the contract. Cupps asserts the district court found the phrase "work-related injury" was ambiguous but applied the incorrect legal standard in interpreting the phrase.

The district court did not find the phrase "work-related injury" was ambiguous. We agree. In its order, the district court observed "Cupps cannot create ambiguity merely by claiming he did not understand terms of the employment application when he certified understanding of the same terms at the time he signed the employment application." The court further observed, "Cupps

---

[3] In S & J's motion to amend its answer, it claimed to be a third-party beneficiary of the contract between Cupps and TSS, citing *Denlinger v. Kenwood Records Mgmt.*, No. 07-0281, 2007 WL 4553050, at *1 (Iowa Ct. App. Dec. 28, 2007). No issue contesting S & J's claim to be a third-party beneficiary was raised on appeal.

gave arguably conflicting testimony during his deposition about whether he was injured while engaged in work-related activity. However, the conflicting testimony does not mean that the term 'work-related' is ambiguous." The purpose of the term was clearly to prevent employees from recovering workers' compensation benefits for a work-related injury and also seeking recovery for the same injury from customers of TSS. Here, Cupps did recover workers' compensation benefits through a settlement with TSS because the injury was considered to be "work related."

The district court had to determine the intent of the parties from what the contract provides. The district court did so.[4] The contract states Cupps can only recover damages from work-related injuries through TSS's workers' compensation insurer. The undisputed facts on the record are that: (1) Cupps was on the clock at the time of his injury; (2) he was being paid for his time; (3) he was outside the building to put his work-related equipment in his vehicle; (4) he was outside without permission, contrary to S & J policy; (5) he was walking through grass when he fell; (6) he intended to return inside to attend an S & J Christmas party; (7) S & J reported the injury on its injury log; and (8) Cupps received workers' compensation benefits.[5]

---

[4] Cupps's claim that the district court incorrectly applied the "casual reader" standard is based on his erroneous conclusion the court was interpreting an ambiguous phrase. Because the court did not find the term ambiguous, we need not address Cupps's claim the court utilized the wrong standard.

[5] In attempting to discern the meaning of "work-related injury," Cupps makes the argument that under the analysis of workers' compensation, he was not injured while performing an activity that arose out of and in the course of employment. Although Cupps received benefits in the form of a settlement, undoubtedly the workers' compensation provider would not have agreed to a settlement if it believed the injury did not arise out of and in the course of employment. The fact that Cupps was outside without permission and contrary to S & J policy, and the fact that he was not walking on a designated walkway,

The district court did not apply the wrong legal standard, and it correctly concluded Cupps suffered a work-related injury within the meaning of the contract. Because there are no genuine issues of material fact and S & J is entitled to judgment as a matter of law, we conclude the district court did not err in granting S & J's motion for summary judgment.

**AFFIRMED.**

---

did not prevent him from receiving workers' compensation benefits. We are similarly untroubled by these facts in concluding his injury was work-related.