# IN THE COURT OF APPEALS OF IOWA

No. 19-0692
Filed September 23, 2020

**GAYLE B. TRANSGRUD,**
    Plaintiff-Appellant,

**vs.**

**MICHAEL DAVID LEER,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

Gayle Transgrud appeals the district court order granting defendant Michael Leer's motion for summary judgment and denying her own motion for summary judgment in her suit brought in relation to injuries she sustained while riding in a semi-tractor owned by Leer and operated by Transgrud's spouse. **AFFIRMED.**

Steven J. Crowley, Edward J. Prill, and Andrew L. Mahoney of Crowley & Prill, Burlington, for appellant.

Michael D. Matteuzzi and Matthew J. Brooker of Matteuzzi & Brooker, P.C., Overland Park, Kansas, for appellee.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

This case arises out of a single-vehicle semi-tractor accident on interstate 380. On December 6, 2016, Gayle Transgrud's husband, John Vee, was driving a semi-tractor owned by appellee Michael Leer and designated by Leer as Unit #388. Vee worked for Leer's business (V&M Farms, a sole proprietorship) as a truck driver, and he was operating Unit #388 in that capacity when the accident occurred. According to the amended petition, Transgrud was the front seat passenger in Unit #388 when the vehicle "suddenly stalled, went out of control, left the highway and rolled over in the ditch." Transgrud sustained injuries in the collision.

Transgrud sued Leer, claiming her injuries were caused by Leer's negligent failure to properly maintain and service Unit #388 and train Vee to appropriately handle the "unusual situation" that happened on December 6.[1] In his answer, Leer asserted the defense that Transgrud had signed a document before riding in the truck that released Leer from all liability to Transgrud. The document was titled "PASSENGER AUTHORIZATION AND RELEASES OF LIABILITY" and stated, in pertinent part:

> By signing below, Passenger acknowledges and agrees that Passenger is not an employee of V&M or an independent contractor providing goods or services to V&M. Passenger further acknowledges and understands that V&M will not pay any amount of any accident, injury, loss, or damage arising out of or related to Passenger riding in the equipment and that V&M will not provide a policy of insurance that provides coverage, including workers' compensation coverage, for Passenger or Passenger's property.

---

[1] Transgrud initially filed her petition against V&M Farms LLC d/b/a V&M Farms Trucking, but Transgrud amended the petition after learning Leer was the sole proprietor of the business operating under the trade name V&M Farms.

Later in the document, under the section title "RELEASES OF LIABILITY," the document states:

> In consideration for V&M's authorization to allow Passenger to ride in the Equipment, Passenger . . . , by signing below, hereby releases V&M, with respect to the authorized transportation, from any and all claims, liability, rights, actions, suits, and demands . . . that Passenger may have against V&M. . . . Moreover, this signed Release may be pleaded by V&M as a counterclaim to or as a defense in bar or abatement of any action of any kind whatsoever brought, instituted, or taken by or on behalf of Passenger

The document was signed by Vee, Transgrud, and one of Leer's employees. It was dated April 16, 2012.

Leer filed a motion for summary judgment, arguing the release provided a complete defense against Transgrud's claims. Transgrud also filed a motion for summary judgment, arguing the document was unenforceable as a release as a matter of law. Following a hearing, the district court granted Leer's motion and denied Transgrud's, ruling the release was a valid and binding contract and thus released Leer from liability to Transgrud. As a result, Transgrud's suit was dismissed. Transgrud appeals.

## I.      Standard of Review

"We review a district court's summary judgment ruling for correction of errors at law." *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018) (quoting *Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016)). "We view the record in the light most favorable to the nonmoving party." *Deeds v. City of Marion*,

914 N.W.2d 330, 339 (Iowa 2018). "Summary judgment is properly granted where the only controversy is the legal effect of the undisputed facts." *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000). "When the facts are not in dispute, we will simply decide whether the district court correctly applied the law to the undisputed facts before us." *Id.*

## II.      Scope and Effect of the Release

Transgrud challenges the district court's grant of summary judgment to Leer based on the release and also challenges the district court's denial of summary judgment to Transgrud on Transgrud's request to strike the release defense as a matter of law. Although framed in the briefs as two separate issues, it is one issue: the scope and effectiveness of the release. If the document was an effective release that covered Transgrud's claims, Leer was entitled to summary judgment and Transgrud's motion for summary judgment necessarily fails. On the other hand, if the document was not an effective release that covered Transgrud's claims, Transgrud was entitled to summary judgment and Leer's motion for summary judgment necessarily fails. If there are factual disputes as to whether the release covered Transgrud's claims, then neither party was entitled to summary judgment. We address this issue in this light.

Releases from liability such as the release at issue in this case are considered contracts and are governed by principles of contract law. *Huber v. Hovey*, 501 N.W.23d 53, 55 (Iowa 1993). "Construing a contract—determining its legal effect—is a matter of law to be resolved by the court." *Id.* at 56. "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752

N.W.2d 430, 436 (Iowa 2008). "The most important evidence of the parties' intentions at the time of contracting is the words of the contract." *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011). Except in cases of ambiguity, the intent of the parties is determined by what the contract itself says. Iowa R. App. P. 6.904(3)(n); *Huber*, 501 N.W.2d at 56.

With these principles in mind, we consider the specific arguments Transgrud raises to challenge the validity of the release.

### A. Lapse in Employment

As noted, Transgrud signed the release in April 2012. One year later, Vee ended his working relationship with V&M Farms to work for a different company. Two months after quitting, Vee returned to V&M Farms and resumed his old position. Transgrud argues this gap in Vee's time working for V&M Farms negated the release.

According to Transgrud, Vee was an employee of V&M Farms and termination of his employment with V&M Farms terminated the release as well. Transgrud asserts that ending an employment relationship severs all agreements between an employer and an employee. In support of this legal conclusion, Transgrud cites *Bradshaw v. Cedar Rapids Airport Commission*, 903 N.W.2d 355 (Iowa Ct. App. 2017), a case cited by the district court for the same conclusion. As a preliminary matter, we are not convinced that *Bradshaw* should be read as broadly as claimed by Transgrud and the district court. However, we need not quibble over the strength of the asserted legal conclusion, because, even if we were to accept the conclusion, it has no bearing on the outcome. As the district court noted in its ruling on the cross-motions for summary judgment, the provision

of the release at issue reflects an agreement between Transgrud and Leer, not between Vee and Leer. Therefore, even if Vee's brief termination of employment severed the terms of the release pertaining to Vee, it did not sever the terms of the contract between Transgrud and Leer. By signing the release, Transgrud agreed "that V&M w[ould] not pay any amount of any accident, injury, loss, or damage arising out of or related to" her riding in Unit #388 and she released "any and all claims, liability, rights, actions, suits, and demands" against Leer. The release does not contain a termination or expiration date or in any way condition Transgrud's release of Leer on continuity of Vee's employment. Because Vee's employment status with V&M Farms is irrelevant to the release's effectiveness as to Transgrud's claims, Vee's brief departure from V&M Farms did not invalidate the release.

### B.    Public Policy

Transgrud argues the release is unenforceable as a matter of law because it is against public policy. Transgrud claims it violates public policy because it "curtails state and federal law" by allegedly circumventing federal regulations requiring vehicle owners to carry liability insurance and Iowa state law making vehicle owners vicariously liable for damage caused by negligent operation of their vehicles. *See* 49 C.F.R. 387.303(b)(2) (2016); Iowa Code § 321.493 (2016).

We start by noting Transgrud's claims in her amended petition are not based on any claimed failure of Leer to carry liability insurance. The issue at hand is whether Transgrud released her claims for negligence, not whether Leer failed to carry insurance. Resolution of the relevant issue is not affected by whether Leer

did or did not carry insurance or did or did not comply with federal or state law regarding insurance coverage. In that sense, the issue of insurance is irrelevant.

Regarding the issue of whether the release violates public policy, our supreme court has "repeatedly held that contracts exempting a party from its own negligence are enforceable, and are not contrary to public policy." *Huber*, 501 N.W.2d at 55. Further, we will not "curtail the liberty to contract by enabling parties to escape their valid contractual obligation on the ground of public policy unless the preservation of the general public welfare imperatively so demands." *Baker v. Stewarts' Inc.*, 433 N.W.2d 706, 707 (Iowa 1988) (quoting *Tschirigi v. Merchants Nat'l Bank of Cedar Rapids*, 113 N.W.2d 226, 231 (Iowa 1962))). We do not believe a party's desire to accompany the party's spouse while the spouse works is of such great public importance as to justify an exception to the general rule.

### C.      Release Not Binding Because Leer Was Not a Party

Transgrud next argues the release is unenforceable as a matter of law because Leer did not personally sign it and Leer's employee who did sign it did not have the authority to bind Leer personally because there "is no corporate authority or structure wherein Leer has granted to his employees the ability to execute binding contracts in his name." For a number of reasons, however, this argument is unpersuasive. First, the release does not require Leer's signature to be binding. The effect of a missing signature has been addressed by our supreme court as follows:

> In the absence of a statute requiring a signature, such as the statute of frauds, or an agreement that the contract shall not be binding until it is signed signatures of both parties are not essential for establishment of a binding contract if manifestation of mutual expressions of assent is otherwise shown. Even when neither party

has signed a contract it still may be binding if there has been mutual assent.

*Serv. Employees Int'l, Local No. 55 v. Cedar Rapids Cmty. Sch. Dist.*, 222 N.W.2d 403, 407 (Iowa 1974). Here, there is no statute requiring a signature of Leer. Additionally, the release does not contain language making the release's effectiveness conditional on Leer or any of his agents' signatures. Instead, the release states it shall be binding on the passenger when the passenger signs, which she did. There is no genuine dispute that Leer manifested assent to the terms of the release, as Leer prepared the document, provided it to Transgrud, and complied with it by permitting Transgrud to ride with her husband.

Second, even if Leer's signature was required, Transgrud's signature was sufficient to create a contract once she began riding in Unit #388. *See Whitters & Sons, Inc. v. Karr*, 180 N.W.2d 444, 446 (Iowa 1970) ("Where a written agreement signed by one party is accepted and adopted by the other, and acted upon, it becomes their contract in the same sense as though both parties had signed." (quoting *McDermott v. Mahoney*, 115 N.W. 32, 35 (Iowa 1908))).

In short, Leer was a party to the release based on the circumstances and actions surrounding the preparation and execution of it.

### D. Unconscionability

Transgrud further argues the release is unenforceable as a matter of law because it is both procedurally and substantively unconscionable. The district court determined the release was a contract of adhesion but nevertheless determined it was not unconscionable.

On our review, we are not as confident as Transgrud and the district court that the release is a contract of adhesion.  It is debatable.  However, we need not and do not decide this issue, because, even if we assume for discussion purposes that the release is a contract of adhesion, Transgrud's claim that the release is unconscionable is not persuasive.

Assuming without deciding that the release is a contract of adhesion, it needs to be "carefully scrutinized by the courts for the purpose of avoiding enforcement of 'unconscionable' clauses."  *Gen. Conf. of Evangelical Methodist Church v. Faith Evangelical Methodist Church*, 809 N.W.2d 117, 123 (Iowa Ct. App. 2011) (quoting *Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 230 (Iowa 2001) (alteration in original)).  However, a contract of adhesion is not necessarily unconscionable.  *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 619 (Iowa 1984).  The adhesion determination does not replace the unconscionability determination but "merely alerts the court that the situation is one in which such a finding may be justified."  *Id.*

"A contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand."  *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011).  The doctrine encompasses both procedural and substantive aspects:

> This doctrine encompasses both procedural abuses arising from the contract's formation and substantive abuses related to the contract's terms.  Procedural unconscionability involves an advantaged party's exploitation of a disadvantaged party's lack of understanding, unequal bargaining power between the parties, as well as the use of fine print and convoluted language.  Substantive unconscionability involves whether or not the substantive terms of the agreement are so harsh or oppressive that no person in his or her right senses would

make it. Finally, whether an agreement is unconscionable must be determined at the time it was entered.

*Id.* at 81 (citations omitted). In assessing whether the release is unconscionable, we consider several factors, including "assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975). Finally, we are mindful that "the doctrine of unconscionability does not exist to rescue parties from bad bargains." *C & J Vantage Leasing Co.*, 795 N.W.2d at 80.

Procedurally, we see no exploitation by Leer in obtaining Transgrud's agreement to the terms of the lease. The release does not include fine print or convoluted language and is confined to approximately one-half of a page. While the record shows Transgrud did not read the release before signing it, our supreme court has previously held that there is no unfair surprise where, as here, Transgrud had the opportunity to read the proposed contract before signing. *See Home Fed. Sav. & Loan Ass'n of Algona*, 357 N.W.2d at 619 (finding no unfair surprise where the party asserting unconscionability had the opportunity to read the contract but chose not to). Furthermore, the release at issue was at least the third such release Transgrud signed within a period exceeding six months, so there had been ample opportunity for Transgrud to familiarize herself with its terms. Finally, while the release may have been presented in a "take-it-or-leave-it" fashion, there is no indication that Leer had a dominant bargaining position or that Transgrud was pressured into signing the release. Even if Leer had dominant bargaining power, Leer was not gaining anything of discernible value by permitting Transgrud to ride in Leer's truck.

Substantively, there are no harsh or oppressive terms in the release. Transgrud was under no obligation to ride along with Vee as he drove Unit #388, and Leer was under no obligation to allow her to do so. In granting Transgrud's request to ride along, there was nothing harsh or oppressive about Leer obtaining a release of future liability in return. The terms agreed to by Transgrud in return for authorization were not "so oppressive that no person in his or her right senses would [agree to them]." *C & J Vantage Leasing Co.*, 795 N.W.2d at 81.

### E.    Employee Handbook

Transgrud argues the district court erred in finding the employee handbook provided to Vee by Leer had no bearing on the release. Transgrud claims the employee handbook was relevant because, while she was not Leer's employee, the handbook constituted a binding contract between Leer and Vee, which did not permit Leer's other employees to enter into contracts on his behalf.

We conclude the district court properly determined the employee handbook has no bearing on the validity of the release. There is no dispute Transgrud was not Leer's employee. Neither the record nor the release itself suggest the employee handbook is incorporated into the release, and Transgrud expressly affirmed that she was not an employee of V&M Farms by signing the release. Similarly, Transgrud's efforts to characterize the release as a waiver of some or all of the provisions of the employee handbook fail because, by the handbook's terms, waivers permitted by it "appl[y] only to the employee for whom the waiver was granted."

### F. Ambiguity

Transgrud argues the district court erred by ruling the release was unambiguous. Transgrud maintains the release is ambiguous as to its duration, the party released, and the types of liability released.

Regarding the release's duration, we conclude the release is unambiguous. The release does not contain any language limiting its duration. It did not need one, and Transgrud cites no authority suggesting it did. By its terms, Leer granted permission to Transgrud and Transgrud released Leer from liability any time Transgrud chose to ride in Unit #388.

Regarding the party released, Transgrud essentially concedes that, if the release is otherwise enforceable, it applies to Leer even though Leer is not named in it.[2] We agree with the district court that Leer's use of an unrecorded trade name (i.e., V&M Farms) does not invalidate the release. *See Thune v. Hoka Cheese Co.*, 149 N.W.2d 176, 178 (Iowa 1967) ("Iowa has long recognized that a person may sue or be sued under a trade name."); *Ambro Advert. Agency v. Speed-Way Mfg. Co.*, 233 N.W. 499, 501 (Iowa 1930) (holding a contract is enforceable by a party where the party has failed to record the trade name the contract was signed under).

Transgrud's final claim of ambiguity centers on whether the release applied to her cause of action. In general, exculpatory contract terms such as the one at issue here must contain "clear and unequivocal language that would notify a casual

---

[2] We reach this conclusion of concession by Transgrud based on the statement in her brief, "Transgrud in large part does not dispute the finding of the District Court and its well-reasoned analysis in regard to trade names and the enforcement of contracts for trade names."

reader that by signing the document, a [signer] would be waiving all claims relating to future acts or omissions of negligence." *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 878–79 (Iowa 2009). But the contract at issue does not need to use the word "negligence." *Id.* at 879–80.

Transgrud relies heavily on *Sweeney*. In *Sweeney*, the document at issue was a permission slip signed by a parent allowing the parent's child to participate in a field trip sponsored by the city's parks and recreation department to attend a baseball game. *Id.* at 875. The child was injured by a flying bat, and a lawsuit against the city followed. *Id.* The city asserted the permission slip constituted a release. *Id.* Our supreme court held that language in the permission slip did not constitute an enforceable anticipatory release of claims against the city for its negligent acts or omissions in connection with the field trip. *Id.* at 880.

We find *Sweeney* distinguishable. In reaching its decision in *Sweeney*, the supreme court compared *Baker v. Stewarts' Inc.*, 433 N.W.2d 706 (Iowa 1988),[3] with *Huber v. Hovey*, 501 N.W.2d 53, 56 (Iowa 1993).[4] *Sweeney*, 762 N.W.2d at

---

[3] *Baker* involved a plaintiff claiming hair straightening products applied to her scalp at a cosmetology school caused subsequent baldness. 433 N.W.2d at 707. The document at issue stated, "I will not hold the Stewart School, its management, owners, agents, or students liable for any damage or injury, should any result from this service." *Id.* The supreme court held this document did not constitute an anticipatory release of future claims based upon negligence of the staff at the school because a release of such claims would not be apparent to a casual reader, as the intention to release the school was not "clearly and unequivocally expressed." *Id.* at 709.

[4] *Huber* involved injuries to a spectator at an auto race, who brought suit to recover damages for his injuries. *Huber*, 501 N.W.2d at 54. The injured spectator had signed a document that emphasized it was a "covenant not to sue" and "releases" various parties "from all liability . . . for any and all loss or damage, and any claim . . . on account of injury . . . whether caused by the negligence of the releasees or otherwise." *Id.* The supreme court enforced the release, noting the document

878. Finding the permission slip signed by the parent much closer to the unenforceable document in *Baker* than the enforceable document in *Huber*, the supreme court found the permission slip unenforceable as a release. *Id*. at 878–79. The court noted the permission slip referred only to "accidents" and contained no clear and unequivocal language that would notify a casual reader that it waived potential claims for the city's negligence. *Id*.

Unlike the purported release in *Sweeney*, which was labeled "Permission Slip," the document at issue here was titled "PASSENGER AUTHORIZATION AND RELEASES OF LIABILITY." It is also stated that Leer "will not pay any amount of any accident, injury, loss or damage arising out of or related to Passenger's riding in the equipment." Later in the relatively short document, there is a section labeled with the heading "RELEASES OF LIABILITY." In that section, the document states Transgrud "releases" Leer "from any and all claims, liability, rights, actions, suit, and demands." These provisions, including multiple titles in all capital letters highlighting the document as a release, are clear and unequivocal and would be apparent to a casual reader, unlike the documents in *Baker* and *Sweeney*. Therefore, we find Transgrud's reliance on *Baker* or *Sweeney* unpersuasive.

In addition to concluding the document in this case is akin to the enforceable release in *Huber*, we also conclude this case is similar to our court's decision in *Cupps v. S & J Tube, Inc.*, No. 17-1922, 2019 WL 156583 (Iowa Ct. App. Jan. 9, 2019). In that case, we considered the phrase "any claim for damage" as used in

---

specifically covered personal injuries, including injuries caused by the negligence of the released parties. *Id*. at 56.

an employment application submitted to a temporary employment agency. *Id.* at *1. Rejecting the argument that the phrase was ambiguous and distinguishing *Sweeney*, our court ruled the phrase "clearly means that if the signer suffers a work-related injury, the only remedy is [the temporary employment agency's] workers' compensation and the remedies do not include any claim for damage, including negligence." *Id.* at *5. We find *Cupps* persuasive and conclude the phrases "will not pay any amount of any accident, injury, loss or damage arising out of or related to Passenger riding in the equipment" and "hereby releases [Leer] from any and all claims, liability, rights, actions, suit, and demands" are unambiguous. By signing the release, Transgrud acknowledged Leer would not pay for any injuries she received while riding in Unit #388 as Vee's passenger, including injuries arising from allegedly negligent conduct. The district court correctly concluded the release was not ambiguous.

### III.    Conclusion

The district court correctly concluded the release was a binding and enforceable contract that released Transgrud's claims against Leer. Because there are no genuine issues of material fact and Leer is entitled to judgment as a matter of law, the district court properly denied Transgrud's motion for summary judgment, granted Leer's motion for summary judgment, and dismissed the suit.

**AFFIRMED.**